[Cite as *Youngstown v. Fraternal Order of Police Labor Council, Inc.*, 2026-Ohio-2731.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

CITY OF YOUNGSTOWN,

Petitioner-Appellant,

v.

FRATERNAL ORDER OF POLICE LABOR COUNCIL, INC.,

Respondent-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 MA 0115

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2025 CV 00734

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Adam V. Buente*, Law Director, City of Youngstown, and *Atty. Jason Patrick Small*, Deputy Law Director, City of Youngstown, for Petitioner-Appellant

*Atty. Kay E. Cremeans*, and *Atty. Michael W. Piotrowski*, Fraternal Order of Police/Ohio Labor Council, Inc., for Respondent-Appellee

Dated: July 10, 2026

**WAITE, P.J.**

{¶1}   Appellant City of Youngstown challenges the judgment of the Mahoning County Court of Common Pleas denying its motion to vacate an arbitration award and confirming the award.   The arbitration concerned an employee disciplinary matter. Appellant terminated the employment of Youngstown Police Department ("YPD") Lieutenant Brian Flynn due to his failure to review and act upon email messages regarding tips about alleged child pornography and child abuse.  Flynn filed a grievance protesting his firing, and the case was sent to arbitration.   The arbitrator determined that the appropriate discipline was a two-week suspension rather than termination of employment. Appellant filed a motion with Mahoning County Court of Common Pleas to vacate the arbitration award, but this was denied, and the award was confirmed by the court.

{¶2}   Appellant argues on appeal that the arbitrator failed to determine whether Flynn's actions constituted justifiable cause for termination of employment.  This assertion is not supported by the record, however.  The arbitrator expressly concluded that there was no just cause for termination.  Appellant also argues that the arbitrator violated the collective bargaining agreement ("CBA") by failing to determine whether Flynn committed a serious offense such that termination, rather than progressive discipline, was appropriate.  The CBA did not require the arbitrator to make an express determination of "serious offense."   The parties stipulated to the questions that were put to the arbitrator for resolution and a determination of "serious offense" was not one of these.  Furthermore, the CBA does not require termination for serious offenses.   The record reveals the arbitration award drew its essence from the CBA, and the award was not unlawful, arbitrary, or capricious.   Neither of Appellant's arguments are persuasive, the sole

assignment of error is overruled, and the judgment of the trial court confirming the arbitration award is affirmed.

Facts and Procedural History

{¶3} This case involves an arbitration award confirmed by the Mahoning County Court of Common Pleas. YPD Lieutenant Brian Flynn was fired by the Appellant City of Youngstown, and Flynn filed a grievance which was processed in accordance with the final and binding arbitration provisions set forth in the CBA between Appellant and Appellee Fraternal Order of Police, Ohio Labor Council, Inc.

{¶4} Flynn was hired in 1998 as a patrolman with the YPD. During his employment Flynn was promoted up the ranks to the position of lieutenant in 2011. In 2014 Flynn attended a seminar sponsored by Ohio Internet Crimes Against Children ("Ohio ICAC"). This training involved investigations of peer-to-peer sharing of child pornography. Peer-to-peer networks are decentralized file sharing networks used to transmit child pornography and other materials. Ohio ICAC is part of a nationwide system of agencies that receive information from the National Center for Missing and Exploited Children ("NCMEC") about suspected child exploitation. In 2014, dedicated computers were needed to search the internet for instances of child pornography. After attending the seminar, Flynn asked his captain if he could purchase the specialized equipment, but his request was denied.

{¶5} In 2018 YPD placed Flynn as the officer in charge ("OIC") of the Family Investigative Services Unit ("FISU") of the YPD. In February 2019 Flynn reached out to Caroline Wathey of Ohio ICAC. He became registered to log on to the Ohio ICAC portal as a representative of YPD to receive detailed tips of alleged instances of child

pornography and abuse, called CyberTips, via the ICAC Data System. A CyberTip contains a summary of information gathered through NCMEC that is further investigated by Ohio ICAC pertaining to suspected child pornography and abuse. CyberTips contain information about the suspect, the suspect's criminal history, the location of the offending content, and its connection to other CyberTips. They include the date the information was received, incident type, and the priority level of the tip. A priority level one tip indicates current suspected sexual abuse. By 2019, new technology allowed Ohio ICAC to send notification emails to registered users that a CyberTip was available for viewing through their secure portal. Also by 2019, a registered user of the Ohio ICAC portal could access CyberTip information on an ordinary personal or work computer. CyberTips are assigned exclusively to the local jurisdiction, such as YPD, where the suspect is located.

{¶6} Based on this process, sometime in 2019 Flynn and other FISU detectives began receiving emails from Ohio ICAC regarding CyberTips. Flynn did not open or act upon these emails. Flynn, as the OIC, also told other FISU detectives not to act on the emails.

{¶7} On September 19, 2019 Caroline Wathey of Ohio ICAC contacted someone at YPD by phone and also sent emails regarding a priority level one CyberTip. Wathey sent the emails to Flynn and two of his subordinates. In the phone call, Wathey provided her personal cell phone number so she could be reached. YPD personnel did not follow up on this tip.

{¶8} On July 31, 2020 Beth Crano, an investigator with Ohio ICAC, sent an email to Flynn and to other YPD email addresses adding more cases to a prior case that had already been sent to YPD in the ICAC Data System.

Case No. 25 MA 0115

{¶9}   On September 2, 2020 Crano sent additional email CyberTips to YPD involving juvenile females.  Crano sent a copy of these emails to the Commander of Ohio ICAC.  YPD did not follow up on these emails.

{¶10}  In February 2021, NCMEC contacted Crano about new material related to an earlier priority level one CyberTip from 2019.  Crano reached out to Major Jeff Allen at the Mahoning County Sheriff's Office because YPD had not responded to any of the CyberTips emails sent to them.  Two days after contacting the Mahoning County Sheriff's Office, a warrant was issued, the suspect was arrested, and the abuse stopped.

{¶11}  On February 23, 2021 Commander David Frattere of Ohio ICAC filed a complaint with the YPD against Grievant Flynn and other officers in the FISU department.  He alleged that on February 18, 2021, a case previously assigned to YPD FISU was mishandled, resulting in violations of YPD General Orders Manual.  The complaint alleged neglect of duty, conduct unbecoming, incompetence, and violation of the standards for supervisors, managers, and administrators.  The complaint was investigated and it was found that 40 or more CyberTips had not been investigated by YPD.

{¶12}  A pre-disciplinary hearing was held on July 21, 2021.  No action was taken at the time, but Appellant was considering a draft letter of discipline prepared by the chief recommending a two-week suspension.

{¶13}  On October 15, 2022, fourteen misdemeanor counts of dereliction of duty were filed against Flynn in Youngstown Municipal Court related to the Ohio ICAC CyberTip incidents.  These were eventually dismissed, and the dismissal of the misdemeanor charges was upheld on appeal.  *State v. Flynn*, 2024-Ohio-941 (7th Dist.).

**{¶14}** A second pre-disciplinary hearing was held on November 10, 2022. Flynn's employment was terminated on December 2, 2022 based on the rule violations cited in the pre-disciplinary conferences.

**{¶15}** On December 8, 2022, Flynn filed a grievance protesting the termination of his employment. His grievance was ultimately submitted to binding arbitration pursuant to the CBA, and the parties mutually selected an arbitrator to hear and decide the case. A two-day hearing was held on August 27 and September 19, 2024. The only issues before the arbitrator, as stipulated by parties, were: "Did the Employer have just cause to terminate Grievant? If not, what is the appropriate remedy?" (12/26/24 Arbitrator's Decision, p. 3.)

**{¶16}** On December 26, 2024 the arbitrator issued a decision and award in which he found that Employer did have just cause to discipline Flynn, but did not have cause to terminate his employment, specifically concluding that "termination was unreasonable and not appropriate given the gravity of the offense, certain mitigating factors, and in light of the Employer's progressive discipline policy." (12/26/24 Award, p. 21.) The arbitrator concluded that the appropriate discipline for Flynn's actions was a two-week suspension. The arbitrator ordered Appellant to reinstate Lieutenant Flynn with no loss of seniority and benefits, less the two-week suspension, and make him whole for all losses.

**{¶17}** On March 26, 2025, Appellant filed a motion to modify and vacate the arbitration award with the Mahoning County Court of Common Pleas. On April 8, 2025 Appellee filed a response and an application to confirm the award. On November 20, 2025 the court issued its judgment denying Appellant's motion to modify and vacate and granting the application to confirm the award. This timely appeal followed.

ASSIGNMENT OF ERROR

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW UPON FINDING THAT THE ARBITRATOR, DESPITE IGNORING ARTICLE 19 OF THE COLLECTIVE BARGAINING AGREEMENT IN ISSUE, ACTED IN ACCORDANCE WITH HIS POWERS AND THE AUTHORITY GIVEN TO HIM BY MOVANT-APPELLANT AND RESPONDENT-APPELLEE SO AS TO PRODUCE A MUTUAL, FINAL, AND DEFINITE AWARD THAT DREW ITS ESSENCE FROM THE COLLECTIVE BARGAINING AGREEMENT BETWEEN THE PARTIES.

{¶18} Appellant raises two issues in this appeal. First, whether the arbitrator failed to make a determination that Flynn's conduct provided justifiable cause to terminate his employment under the CBA. This issue is clearly resolved simply by reviewing the arbitrator's findings in the arbitration decision:

Based on an examination of the facts and arguments of the parties in this proceeding and considering the above criteria, it is the Arbitrator's opinion that the Employer did have just cause to discipline the Grievant, but termination was unreasonable and not appropriate given the gravity of the offense, certain mitigating factors, and in light of the Employer's progressive discipline policy.

Case No. 25 MA 0115

(12/26/24 Arbitration Decision, p. 21.) The arbitrator determined there was no just cause to terminate employment, although there was just cause to impose other discipline. This fully resolves Appellant's first issue in its argument.

{¶19} The second issue addresses whether the arbitrator violated Article 19, Section 3 of the CBA by failing to determine whether Lieutenant Flynn's conduct constituted a serious offense for which progressive discipline was not applicable. Before resolving this issue, the standards of review of an arbitration award by the trial court must be considered.

{¶20} As a matter of policy, the law favors and encourages arbitration. *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 84 (1986). "The only way to give effect to the purposes of the arbitration system of conflict resolution is to give lasting effect to the decisions rendered by an arbitrator whenever that is possible." *City of Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 52 Ohio St.3d 174, 176 (1990). Accordingly, courts avoid disturbing an arbitration award and have only limited authority to vacate an award. *Fraternal Order of Police Capital City Lodge No. 9 v. Columbus*, 2006-Ohio-1520, ¶ 7 (10th Dist.). "Judicial review of arbitration awards is narrow, and a high degree of deference must be afforded to the arbitrator's findings and interpretation of the contract." *Monroe Cty. Sheriff v. Fraternal Order of Police*, 2002-Ohio-5246, ¶ 24 (7th Dist.). Arbitration awards are presumed valid, and a reviewing court may not substitute its judgment for that of the arbitrator. *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 132 (1990).

**{¶21}** Judicial review of a request to vacate an arbitration award is limited to the very narrow grounds set forth in R.C. 2711.10. "Ohio's statutory scheme in R.C. 2711.10 limits judicial review of arbitration awards to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority." *Monroe Cty. Sheriff* at ¶ 25. "When reviewing a decision of a common pleas court confirming, modifying, vacating, or correcting an arbitration award, an appellate court should accept findings of fact that are not clearly erroneous but decide questions of law de novo." *Portage Cty. Bd. of Dev. Disabilities v. Portage Cty. Educators' Assn. for Dev. Disabilities*, 2018-Ohio-1590, syllabus. Whether an arbitrator has exceeded his or her authority is a question of law that is reviewed de novo. *Id.* at ¶ 25.

**{¶22}** "An arbitrator has broad authority to fashion a remedy, even if the remedy contemplated is not explicitly mentioned in the labor agreement." *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati*, 63 Ohio St.3d 403, 407 (1992). In discipline cases, the arbitrator has the authority to review the appropriateness of the discipline imposed. *Bd. of Trustees of Miami Twp. v. Fraternal Order of Police*, 81 Ohio St.3d 269 (1998), syllabus.

**{¶23}** Once a motion to confirm an arbitration award has been filed, and once it is shown that none of the reasons for overturning the award listed in R.C. 2711.10 exist, the court of common pleas must confirm the award. *Monroe Cty. Sheriff* at ¶ 19.

**{¶24}** In the absence of specifically defined terms in a collective bargaining agreement, the arbitrator has the authority to create its own definitions of such terms. *Summit Cty. Children Servs. Bd. v. Communication Workers of Am., Local 4546*, 2007-Ohio-1949, ¶ 19. "[A] court of common pleas cannot impose its own meaning on terms

used in a collective bargaining agreement when the terms are undefined and when the arbitrator has been given discretion to interpret those terms." *Monroe Cty. Sheriff* at ¶ 20, citing *Miami Twp. Bd. of Trustees* at 272.

**{¶25}** "An arbitrator may review and modify both the 'just cause' finding used to support an employer's disciplinary action and the appropriateness of the type of discipline to be meted out, unless the employment agreement otherwise restricts such review." *Id.* ¶ 23, citing *Miami Twp. Bd. of Trustees* at 273.

**{¶26}** "In reviewing an application to vacate an arbitrator's award, the court is limited to ascertaining whether the award draws its essence from the CBA and whether it is unlawful, arbitrary, or capricious." *Util. Workers Union of America Local 436-A v. E. Ohio Regional Wastewater Auth.*, 2017-Ohio-7794, ¶ 42 (7th Dist.), citing *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 110 (2001). If there is a rational nexus between the CBA and the award, then the award draws its essence from the CBA. *Id.*

**{¶27}** In this appeal, Appellant alleges that the arbitrator exceeded his authority in modifying Flynn's discipline from termination of employment to a two-week suspension. Courts have consistently held that an arbitrator does not exceed its authority by modifying disciplinary action. *Ohio Patrolmen's Benevolent Assn. v. Findlay*, 2017-Ohio-2804, ¶ 29. The arbitrator's authority was limited by two main considerations: the terms of the CBA, and the stipulated scope of the proceedings, which was: "Did the Employer have just cause to terminate Grievant? If not, what is the appropriate remedy?" (12/26/24 Arbitrator's Decision, p. 3.) Although Appellant urges this Court to look exclusively at the CBA in resolving this appeal, the main question raised on appeal regarding the CBA was

not a question presented to the arbitrator. Appellant could have expanded the scope of the arbitrator's inquiry to include an express decision as to whether Flynn's conduct was a "serious offense" so as to preclude progressive discipline. Appellant failed to frame the arbitrator's scope of inquiry in this manner.

**{¶28}** Furthermore, whether the arbitrator may or may not have perfectly executed the terms of the CBA was not the issue before the trial court and is not the issue on appeal. The sole issue is whether the award "draws its essence" from the CBA. *FOP Capital City Lodge No. 9* at ¶ 9. Both parties agree that this means that there must be a rational nexus between the agreement and the award and that the award is not arbitrary, capricious, or unlawful. *Mahoning Cty. Bd. of Mental Retardation* at paragraph one of the syllabus.

**{¶29}** The factual basis of the award is not in question in this appeal, nor should it be. The arbitrator agreed with Appellant that Flynn's conduct warranted discipline. The arbitrator found that ICAC began sending tip emails to Flynn sometime starting in 2018-2019, and that the emails were not opened. Flynn offered various reasons as to why he did not follow up on the emails. Flynn argued that he had no duty to respond to the CyberTips emails, but the arbitrator rejected that argument, at least in part. The arbitrator accepted Flynn's argument that he did not have the proper computer and software to read or respond to the CyberTips from 2014 to 2019. (Arbitration Award, p. 23-24.) In addition, prior to 2019, senior staff at YPD made it difficult for Flynn to become further involved with the CyberTips program. (Arbitration Award, p. 24.) After 2019 though, Flynn was given a password to enter the ICAC CyberTips portal and should have been aware that he could access CyberTips from his work computer. (Arbitration Award, p. 24.) The

arbitrator found that Flynn did not purposely flout his duties, but rather, made incorrect assumptions about his responsibilities starting in 2019. (Arbitration Award, p. 23.) It was his reliance on those incorrect assumptions that led to his rule violations. (Arbitration Award, p. 23.)

{¶30} As part of his defense, Flynn argued that the CyberTips were sent to his email spam/junk mail and that this prevented him from seeing them. The arbitrator concluded that Flynn lied about this. He believed Flynn was truthful in testifying that he deleted the CyberTips without opening them. The fact that a grievant was untruthful in his testimony about some aspects of the disciplinary case does not provide basis, in and of itself, to overturn an arbitration award. *Wright State Univ. v. Fraternal Order of Police*, 2017-Ohio-854, ¶ 36 (2d Dist.).

{¶31} The arbitrator found plausible Flynn's stated belief that other organizations were reviewing and handling the CyberTips. (Arbitration Award, p. 24.) Flynn testified that Ohio BCI was handling the CyberTips. (Arbitration Award, p. 6.) The arbitrator also found that Ohio ICAC shared some of the blame in the failure of the CyberTips to be acted upon. (Arbitration Award, p. 25.) Although Caroline Wathey did make one phone call to an unnamed person at YPD in September 2019 regarding a priority level one CyberTip, all subsequent communication was by email until February of 2021. The arbitrator determined that Ohio ICAC should not have waited 18 months (September 2019 to February 2021) before following up by phone, regular mail, certified mail, or some means other than email, to notify YPD that no action was being taken regarding the CyberTips. (Arbitration Award, p. 25.) There was no evidence that any CyberTips were opened or that Flynn entered the CyberTips portal. (Arbitration Award, p. 26.) The arbitrator also

noted that neither Flynn nor the YPD Chief of Police received any special notice of the problem, except via email (and the one phone call in 2019), until the February 2021 incident leading to Flynn's disciplinary action. (Arbitration Award, p. 8.) The arbitrator noted that a communication problem involving failure to respond to email messages cannot be solved by additional email. (Arbitration Award, p. 25.). None of these facts as determined by the arbitrator are contested by the parties.

**{¶32}** Turning now to Appellant's legal arguments, Appellant contends the arbitrator specifically violated or failed to implement Article 19, Section 3 of the CBA, which states:

> Except in instances where an employee is charged with a serious offense, discipline will be applied in a corrective, progressive, and uniform manner in accordance with this contract.

**{¶33}** Appellant's primary argument on appeal is that the arbitrator was required, based on CBA Article 19, Section 3, to make a finding as to whether Flynn's actions constituted a "serious offense," and the arbitrator failed in this regard. Appellant urges this should result in a reversal of the trial court judgment, vacation of the arbitration award, and the imposition of the original discipline of termination of employment.

**{¶34}** Appellant has not cited any language contained in the CBA that requires an express determination of "serious offense" by the arbitrator. Further, as stated earlier, the parties agreed to the scope of the arbitration, and an express determination of "serious offense" was not contained within the scope of the arbitration.

{¶35} This focus on "serious offense" seems to have arisen, not during arbitration, but during the common pleas court proceedings. (3/26/25 Application and Motion to Vacate, p. 2.) In its Application, Appellant stated that YPD had made a finding that Flynn's conduct was a "serious offense" under the CBA, that a "serious offense" required termination of employment, and that Appellant argued this position in arbitration. (3/26/25 Application and Motion to Vacate, p. 2.) However, the record does not support these assertions. Although CBA Article 19, Section 3 was mentioned in Appellant's opening argument at the arbitration, the question regarding whether Flynn's conduct amounted to a "serious offense," whether a finding of "serious offense" was requested by Appellant, or whether termination was the only discipline to be imposed for a "serious offense," were never raised or discussed. The arbitrator was never asked to make such findings. Unremarkably, he did not make such findings. "[I]t is the well-settled rule that a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *Fostoria v. Ohio Patrolmen's Benevolent Assn.*, 2005-Ohio-4558, ¶ 12, opinion modified on reconsideration, 2005-Ohio-6124. The invited error rule applies whether the trier-of-fact is a judge in a court or an arbitrator. *Id.* at ¶ 15.

{¶36} The phrase "serious offense" only appears once in the transcript of the arbitration hearing. (Tr., p. 19.) YPD's counsel, Melissa Fisco, quoted CBA Article 19, Section 3 in her opening remarks. (Tr., p. 19.) Her stated reason for citing the CBA was to urge that progressive discipline was not appropriate in this case, but nothing more was said during the entire two-day hearing about the meaning of "serious offense" or its relevance to this case. The apparent point of quoting the CBA was to discuss progressive discipline. "But here, progressive discipline wasn't applied, nor should it have been,

because no one, especially young children, should be required to withstand abuse to make sure that officers get the message through progressive discipline." (Tr., p. 19.) The focus of the hearing was whether the arbitrator should apply progressive discipline, not whether Flynn's conduct should be strictly defined as a serious offense which can only result in termination. At the end of the hearing, the arbitrator asked Fisco if there was anything else she would like to bring to the arbitrator's attention, and she responded "No, there's nothing further." (Tr., p. 250.) Thus, over two full days of hearing, "serious offense" was mentioned only once and was never discussed at all.

**{¶37}** Appellant's argument is more about semantics than substance. The arbitrator's award at various places discusses the "gravity" of the offense, rather than using the phrase "serious offense." The arbitrator ultimately held that one of the factors he would ponder in determining whether termination was just and reasonable was "whether the discipline issued was appropriate given the relative gravity of the offense . . . ." (Arbitration Award, p. 21.) The arbitrator held that termination was not appropriate given the gravity of the offense. (Arbitration Award, p. 24.) "Gravity" is a synonym of the word "seriousness." (https://www.merriam-webster.com/thesaurus/gravity). To argue that the arbitrator did not consider whether the offense was serious is simply not supported by the record.

**{¶38}** Appellant also contends that Article 19, Section 3 of the CBA requires that Flynn's employment be terminated following his commission of a "serious offense." This is also unsupported. The CBA does not state that an employee must be fired for commission of a serious offense. It says that, for non-serious offenses, discipline will be administered in a corrective, progressive, and uniform matter. It does mandate any

particular discipline be meted out when the offense is serious, other than that the discipline should not be corrective, progressive, and uniform as defined by the CBA. Termination can fit that definition, but so can many other lesser forms of discipline, such as the discipline imposed by the arbitrator in this case. Clearly, the CBA does not provide the arbitrator must defer to the discipline imposed by the employer when the offense is serious.

**{¶39}** Appellee correctly notes that, although the arbitrator appropriately discusses progressive discipline in the award, he did not impose progressive discipline for Flynn's offense, as defined in the CBA. The arbitrator formulated a disciplinary action he considered "appropriate," and was specifically given the power to do so by the parties at the very beginning of this arbitration. Progressive discipline under the CBA begins with a letter of instruction and caution, and then progresses to a written reprimand. (CBA, Article 19, Section 1.) In bypassing these two lesser forms of discipline, the arbitrator fashioned its own remedy somewhere between the strictly defined progressive discipline and the employer's termination of employment.

**{¶40}** The arbitrator's award is not arbitrary, capricious, or unlawful. The 27-page award carefully sets forth the nature of the case, the question as framed by parties, the evidence shared by both parties, and contains an analysis of various CBA provisions. The arbitrator thoughtfully reviewed the arguments and testimony presented by Flynn as to why he failed to respond to any of the CyberTips. The arbitrator believed some of Flynn's reasons, and rejected others. The arbitrator determined there were mitigating circumstances that helped explain Flynn's actions. The arbitrator also noted that Appellant was considering imposing only a two-week suspension prior to charging Flynn

with crimes related to his actions. The arbitrator made a specific finding that: "Reasonable minds could only conclude that the termination was a direct result of the criminal charges being filed . . . ." (Arbitration Award, p. 20.) The arbitrator also found that those charges were all dismissed. We conclude from this that the arbitrator decided there was no reasonable basis for termination once the criminal charges were dismissed.

{¶41} While a two-week suspension seems fairly lenient considering the infractions involved in this case, neither this Court nor the trial court is permitted to substitute our judgment for the arbitrator's in this matter. Whether we would have decided this case differently is not a question for this Court. We may only reverse if the award has no nexus to the CBA. However, the nexus of the arbitrator's award to the CBA is apparent in the award. The CBA allows for discipline to be imposed only for "just cause." (CBA, Article 19, Section 1.) Just cause is not defined in the CBA and was left to the arbitrator to define. Appellant has not cited to any automatic termination provision of the CBA or any language requiring the arbitrator to defer to the discipline chosen by the employer. The parties agreed that the arbitrator was to make a "just cause" determination. The arbitrator determined Appellant did not have just cause to terminate Flynn's employment. (12/26/24 Arbitrator's Decision, p. 21.) The arbitrator modified the discipline sought by Appellant to a two-week suspension. This record supports that the CBA, and the stipulations of the parties at the start of arbitration, gave the arbitrator the power to determine whether just cause for termination existed and to modify the discipline imposed to one the arbitrator found "appropriate." The award drew its essence from the CBA, and this arbitrator's award was not unlawful, arbitrary, or capricious. None of the reasons for overturning an award pursuant to R.C. 2711.10 were proven, and the court

of common pleas had no choice but to confirm the arbitration award. Appellant's assignment of error is overruled.

## Conclusion

{¶42} Appellant challenges the denial of its motion to vacate or modify an arbitration award arising from a grievance filed by Lieutenant Brian Flynn of YPD. Appellant argues on appeal that the arbitrator erred by failing to determine whether there was justifiable cause for termination of employment, but the record shows that the arbitrator did decide this issue, and found no just cause to terminate. Appellant also argues that the arbitrator was required by the CBA to make a finding as to whether Flynn committed a "serious offense," and should have concluded that termination of employment was the only permissible discipline for a serious offense. Appellant did not raise this argument in the arbitration hearing. Additionally, the CBA does not require such finding be made or require termination of employment for serious offenses. While reasonable minds could differ with the decision of the arbitrator, there is a rational nexus between the CBA and the award, the award draws its essence from the CBA, and the arbitrator's award was not unlawful, arbitrary, or capricious. The trial court correctly confirmed the award. Appellant's sole assignment of error is overruled and the judgment of the trial court is affirmed.

Robb, J. concurs.

Dickey, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**